## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## ORANGEBURG DIVISION

| | | |
|---|---|---|
| William Montague Nix, Jr., | ) | Civil Action No. 5:13-02173-JMC |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| Bennie Glenn Holbrook and Stevens | ) | |
| Transport, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff William Montague Nix, Jr. ("Plaintiff"), filed this action against Defendants Bennie Glenn Holbrook ("Holbrook") and Stevens Transport, Inc. ("STI"), (collectively "Defendants"), seeking to recover damages for injuries suffered when the car Plaintiff was driving collided with a tractor-trailer operated by Holbrook and owned by STI.  (ECF No. 41.)

This matter is before the court on STI's Motion for Protective Order as a result of objections made during the deposition of Bill Tallent ("Tallent"), the company's designated representative pursuant to Fed. R. Civ. P. 30(b)(6) ("Rule 30(b)(6)").  (ECF No. 26.)  Plaintiff opposes STI's Motion for Protective Order.  (ECF No. 31.)  For the reasons set forth below, the court **GRANTS IN PART AND DENIES IN PART** STI's Motion for Protective Order.

## I.    RELEVANT BACKGROUND TO PENDING MOTION

Plaintiff alleges that on January 29, 2013, he was injured while driving "south on Interstate 95 when suddenly and without warning the tractor-trailer owned by . . . [STI] and operated by the . . . Holbrook, began backing up in the emergency lane then suddenly and without warning extended into the lanes of travel on Interstate 95, causing the trailer of the Defendants' tractor-trailer to improperly obstruct both south-bound lanes of Interstate 95 and causing the Defendants' trailer to collide with the Plaintiff's vehicle."  (ECF No. 41 at 2 ¶ 8.)

As a result of the injuries he sustained, Plaintiff commenced a negligence action against Defendants on July 12, 2013 in the Orangeburg County (South Carolina) Court of Common Pleas.  (ECF No. 1-1.)  On August 12, 2013, Defendants removed the action to this court asserting "diversity of citizenship between the party Plaintiff and the party Defendants pursuant to 28 U.S.C. §1332" and that "the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00."  (ECF No. 1 at 2 ¶¶ 4, 6.)

On May 23, 2014, Plaintiff served STI with a Notice of Rule 30(b)(6), FRCP, Video Deposition, which set the Rule 30(b)(6) deposition of Tallent for July 9, 2014.  (ECF No. 23-1.)  At Tallent's deposition, "[c]ounsel for the Defendants objected to certain questions posed by David Whittington, counsel for the Plaintiff, to the extent that the questions required the deponent/corporate designee to disclose matters which would be protected by the attorney-client privilege and/or the work product doctrine, and instructed the deponent not to answer any portion of the questions that would involve a disclosure of attorney-client privileged matters . . . ."  (ECF No. 26 at 1.)  STI then filed a Motion for Protective Order on July 16, 2014.  (Id.)  Plaintiff filed a Memorandum in Opposition to STI's Motion for Protective Order on August 4, 2014.  (ECF No. 31.)  On December 16, 2014 and January 5, 2015, the court heard argument from the parties on the pending Motion for Protective Order.  (ECF Nos. 73, 77.)

## II.     LEGAL STANDARD

A.     Discovery Generally

Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter . . . . [r]elevant

information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. "For purposes of discovery, then, information is relevant, and thus discoverable, if it 'bears on, or . . . reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case.'" Amick v. Ohio Power Co., No. 2:13-cv-06593, 2014 WL 468891, at *1 (S.D. W. Va. Feb. 5, 2014) (citing Kidwiler v. Progressive Paloverde Ins. Co., 192 F.R.D. 193, 199 (N.D. W. Va. 2000)). "Although 'the pleadings are the starting point from which relevancy and discovery are determined . . . [r]elevancy is not limited by the exact issues identified in the pleadings, the merits of the case, or the admissibility of discovered information.'" Id. (citing Kidwiler, 192 F.R.D. at 199). "Rather, the general subject matter of the litigation governs the scope of relevant information for discovery purposes." Id. "Therefore, courts broadly construe relevancy in the context of discovery." Id.

B.    Motions for Protective Order

A court may grant a protective order to restrict or prohibit discovery that seeks relevant information if necessary "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c). "The party moving for a protective order bears the burden of establishing good cause." Webb v. Green Tree Servicing LLC, 283 F.R.D. 276, 278 (D. Md. 2012). "Normally, in determining good cause, a court will balance the interest of a party in obtaining the information versus the interest of his opponent in keeping the information confidential or in not requiring its production." UAI Tech., Inc. v. Valutech, Inc., 122 F.R.D. 188, 191 (M.D.N.C. 1988). In other words, "the Court must weigh the need for the information versus the harm in producing it." A Helping Hand, LLC v. Baltimore Cnty., Md., 295 F. Supp. 2d 585, 592 (D. Md. 2003) (internal quotation marks

omitted).  The standard for issuance of a protective order is high.  <u>Minter v. Wells Fargo Bank, N.A.</u>, 258 F.R.D. 118, 125 (D. Md. 2009).  However, trial courts have broad discretion "to decide when a protective order is appropriate and what degree of protection is required."  <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20, 36 (1984).

C.    <u>Deposition Objections Based Upon Privilege</u>

"When a party withholds information otherwise discoverable by claiming that the information is privileged . . ., the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed-and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A).  Generalized objections asserting the protection of the attorney-client privilege or the work product doctrine do not comply with the Federal Rules of Civil Procedure.  <u>AVX Corp. v. Horry Land Co., Inc.</u>, C/A No. 4:07-3299-TLW-TER, 2010 WL 4884903, at *3 (D.S.C. Nov. 24, 2010) (citation omitted).

*1. Attorney-client Privilege*

The attorney-client privilege "affords confidential communications between lawyer and client complete protection from disclosure."  <u>Hawkins v. Stables</u>, 148 F.3d 379, 383 (4th Cir. 1998).  This protection applies to communications between a corporate party and its in-house counsel, as well as to communications with a privately-retained attorney.  <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 389–90 (1981).  Further, the attorney-client privilege extends not only to documents authored by an attorney, but also to information and queries submitted to him by his client.  <u>Id.</u> at 390 (explaining that the attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the

4

lawyer to enable him to give sound and informed advice"); In re Allen, 106 F.3d 582, 601 (4th Cir. 1997) (applying Upjohn).

The attorney-client privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." Hawkins, 148 F.3d at 383.

## 2. Work Product Doctrine

The work product doctrine protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). For a document to be created "in anticipation of litigation" it must be "prepared because of the prospect of litigation when the preparer faces an actual claim following an actual event or series of events that reasonably could result in litigation." Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir. 1992). To qualify as work product shielded from discovery, the evidence must be: (1) documents or tangible things otherwise discoverable; (2) prepared in anticipation of litigation or for trial; and (3) by or for a party to the lawsuit or by or for the party's representative. See, e.g., Collins v. Mullins, 170 F.R.D. 132, 134 (W.D. Va. 1996); Pete Rinaldi's Fast Foods, Inc. v. Great Am. Ins. Cos., 123 F.R.D. 198, 201 (M.D.N.C. 1988) (citation omitted). The party opposing discovery bears the

burden of showing that information or materials withheld from discovery meet these three criteria and, thus, are protected by the work-product doctrine. Sandberg v. Va. Bankshares, Inc., 979 F.2d 332, 355 (4th Cir. 1992). "The party seeking protection must make this showing with a specific demonstration of facts supporting the requested protection, preferably through affidavits from knowledgeable persons." E.I. Du Pont de Nemours and Co. v. Kolon Indus., Inc., No. 3:09cv58, 2010 WL 1489966, at *3 (E.D. Va. Apr. 13, 2010) (internal quotations omitted).

The work product doctrine encompasses both "fact" work-product and "opinion" work-product. Fact work product consists of documents prepared by an attorney that do not contain the attorney's mental impressions. In re Grand Jury Proceedings, Thursday, Special Grand Jury Session Sept. Term, 1991, 33 F.3d 342, 348 (4th Cir. 1994). It can be discovered upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship. Id.

Opinion work product contains the fruit of the attorney's mental processes and, thus, is more scrupulously protected. Id. Opinion work product can become discoverable if the privilege has been waived by the holder. See In re Doe, 662 F.2d 1073, 1081 (4th Cir. 1981) ("[W]hen an attorney freely and voluntarily discloses the contents of otherwise protected work product to someone with interests adverse to his or those of the client, knowingly increasing the possibility that an opponent will obtain and use the material, he may be deemed to have waived work product protection.").

### III.     ANALYSIS

A.     STI's Motion for Protective Order (ECF No. 26)

    *1. STI's Position*

STI contends that the following questions posed during Tallent's Rule 30(b)(6) deposition seek information protected from disclosure by privilege:

**Question 1:** "Okay. What time did you hire Young, Clement, Rivers as your lawyers?  And what documentation exists, if any, that would confirm your retention of them the morning of this accident?"

**Question 2:** "Okay. Did your counsel play a role in the determination to terminate or disqualify Mr. Holbrook?"

**Question 3:** "Did Stevens speak to anyone or consult with anyone in the field of accident reconstruction about this accident?  What is the name of the person that Stevens has spoken to?"

**Question 4:** "Okay. So why would it – why would – why would you have answered the – Stevens answered the interrogatory as being not applicable when it asked for disqualifications of drivers and he was found disqualified by Stevens after this accident."

**Question 5:** "Well, why did you provide information in response to other interrogatories beyond the 25, Mr. Tallent, if you instructed your lawyers to object to anything above 25?"

**Question 6:** "Okay.  All right.  I'm just curious.  Are there any lawyers that you have – hold in a high opinion?  Any types of lawyers?"

**Question 7:** "Okay. Why does Stevens want to inspect the vehicle today and get the download of the data?  Why didn't Stevens ask to inspect the vehicle and download the data 18 months ago?"

**Question 8:** "Okay.  All right.  I think at this point – let me ask you this.  What – what is the net worth of Stevens today?"

(ECF No. 26 at 3–8.)   STI asserts that Tallent should not be required to answer the aforementioned questions for the following reasons: (1) Question 1 seeks "privileged information including but not limited to communications between counsel and client as well as attorney work product"; (2) Any response to Question 2 would disclose "protected "mental impressions, opinions, conclusions, or legal theories of defense counsel"; (3) The answer to Question 3 is protected from disclosure by Rule 26(b)(4)(D) because it results from an "investigation and other activities performed in anticipation of litigation" and "communications protected by the attorney-client privilege"; (4) Questions 4, 5, and 7 seek to elicit "protected

mental impressions, legal strategy, reasoning, opinions and/or conclusions of counsel"; (5) A response to Question 6 is not "relevant to the claims and defenses at issue in this case and therefore cannot lead to the discovery of admissible evidence"; and (6) Question 8 is "overly broad, unduly burdensome, and seek to obtain information that is not reasonably calculated to lead to the discovery of admissible evidence pursuant to Rule 26 FRCP." (Id.)

     2. *Plaintiff's Position*

In opposing STI's Motion for Protective Order, Plaintiff asserts that Tallent should be required to respond to Questions 1, 2, and 3 because STI has failed to establish that "the attorney-client privilege or work product doctrine applies and all questions related to counsel's post-loss/[accident] investigation . . . ." (ECF No. 31 at 5.)  More specifically, Plaintiff asserts that these privileges do not allow STI to either withhold the identity of its non-testifying accident reconstruction or deny Plaintiff the opportunity to examine the accident reconstruction investigation performed by an independent adjuster retained by STI's counsel. (Id. at 6–7.) Plaintiff asserts that the Federal Rules of Civil Procedure allow him to probe Tallent on why STI provided certain responses (such as "Not Applicable") to Plaintiff's interrogatories. (Id. at 8–9 (citing Fed. R. Civ. P. 33(b) & (d)).)  As to Question 6, Plaintiff states that he fails to understand why the question was included in the Motion for Protective Order since counsel for STI had already been informed that the question would be withdrawn. (Id. at 9.)  Plaintiff asserts that STI waived the applicability of the work product doctrine to Question 7 after (1) Tallent testified that "Plaintiff was artificially inflating his property damage claim by continuing to store the [wrecked] vehicle and not selling it for salvage" and (2) STI served supplemental discovery requests demanding the opportunity "to inspect the vehicle and download data from its on-board computer." (Id. at 12.)  Finally, Plaintiff asserts that under South Carolina law, he is entitled to

ask Question 8 because net worth is relevant in determining punitive damages and STI's financial information may establish the extent of control the company had over Holbrook at the time of the accident.  (Id. at 14.)

Based on the foregoing, Plaintiff argues that STI has failed to carry its burden of establishing entitlement to a protective order.  (Id.)

B.    The Court's Review

Upon consideration of the parties' respective arguments regarding the pending Motion for Protective Order, the court makes the following findings as to each aforementioned question as set forth below:

1.    *Question 1*: In Question 1, Plaintiff neither seeks information related to legal advice provided to STI by its counsel, Young Clement Rivers, LLP, nor does he inquire about work product prepared in anticipation of litigation.  As a result, the court finds that the date and time STI hired Young Clement Rivers, LLP as its attorneys and the specification of the document(s) confirming the firm's retention on or about January 29, 2013, are not protected from disclosure by the attorney-client privilege and/or the work product doctrine.  See, e.g., Behrens v. Hironimus, 170 F.2d 627, 628 (4th Cir. 1948) ("The existence of the relation of attorney and client is not a privileged communication. The privilege pertains to the subject matter, and not to the fact of the employment as attorney, and since it presupposes the relationship of attorney and client, it does not attach to the creation of that relationship.  So, ordinarily, the identity of the attorney's client, or the name of the real party in interest, and the terms of the employment will not be considered as privileged matter.  The client or the attorney may be permitted or compelled to testify as to the fact of his employment as attorney, or as to the fact of his having advised his client as to a certain matter, or performed certain services for the client . . . .") (Citation and

internal quotation marks omitted); <u>In re Semel</u>, 411 F.2d 195, 197 (3d Cir. 1969) ("In the absence of unusual circumstances, the fact of a retainer, the identity of the client, the conditions of employment and the amount of the fee do not come within the privilege of the attorney-client relationship.") (Citations omitted).   Therefore, the court **DENIES** STI's Motion for Protective Order as to Question 1.

2.  *Question 2*: The court finds that a "Yes" or "No" response to Question 2 does not specifically incite testimony that would violate the attorney-client privilege and/or the work product doctrine.   Moreover, Question 2 seeks information regarding STI's business decision to terminate/disqualify Holbrook and a response to such question is only protected if it involves extensive legal advice.  <u>See</u>, <u>e.g.</u>, <u>Alomari v. Ohio Dep't of Pub. Safety</u>, C/A No. 2:11-cv-00613, 2013 WL 4499478, at *4 (S.D. Ohio Aug. 21, 2013) ("Rather, the attorney-client privilege "applies only to communications made to an attorney in his capacity as legal advisor.   Where business and legal advice are intertwined, the legal advice must predominate for the communication to be protected.") (Internal quotation marks and citation omitted); <u>Perius v. Abbott Labs.</u>, No. 07 C 1251, 2008 WL 3889942, at *7 (N.D. Ill. Aug. 20, 2008) ("The attorney-client privilege does not protect business advice, even when the advice is given by an attorney, but it does protect an attorney's legal advice about a business decision.").   Since the question presented does not suggest a response containing extensive legal advice, the court **DENIES** STI's Motion for Protective Order as to Question 2.

3.  *Question 3[1]*: Fed. R. Civ. P. 26(b)(4)(D) precludes discovery of facts known or opinions held by a specially retained, non-testifying, consulting expert—absent a showing of exceptional circumstances.   <u>Id.</u>  Plaintiff asserts exceptional circumstances exist because his

---

[1] The court notes that the answer to Question 3 was also the subject of STI's Motion for Protective Order regarding Topic 3 of Plaintiff's Rule 30(b)(6) Notice of Deposition.  (<u>See</u> ECF Nos. 22-1 at 6, 89 at 7.)

injuries prevented him from being able to conduct a post-accident, on-scene investigation while STI had an independent adjuster "at the scene of the collision immediately after the incident, presumably while vehicles were in the roadway, [and] witnesses were present, . . . ."  (ECF No. 31 at 7.)  In this regard, Plaintiff argues that since he "cannot obtain the same type of information that was present at the scene of the collision, Defendant Stevens' post-accident investigation and/or accident reconstruction is discoverable based on substantial need."  (Id. (citing Stout v. Norfolk & W. Ry. Co., 90 F.R.D. 160, 161 (S.D. Ohio 1981) ("Accordingly, we conclude that the statements taken by the railroad in this case were records made in the ordinary course of business and were not taken in anticipation of litigation.  Moreover, even if they were taken in anticipation of litigation, their contemporaneity renders them so unique and unduplicable that need and hardship are clearly established.")).)

Upon review, the court is persuaded that Tallent should not only answer Question 3, but exceptional circumstances justify requiring STI to (1) either provide facts known and opinions held by any non-testifying, consulting expert identified by Tallent or (2) produce post-accident reconstruction investigation information developed by STI's independent adjuster at the accident scene.  Accordingly, the court **DENIES** STI's Motion for Protective Order as to Question 3.

4.  *Questions 4 & 5*: Questions 4 and 5 address issues Plaintiff had with STI's responses to discovery requests.  The court agrees with STI that the work product doctrine is implicated by Questions 4 and 5 because "answering requests for production and interrogatories customarily is performed with the assistance of counsel . . . [and t]hus, the proposed area of inquiry improperly trespasses into areas of work product and attorney-client privilege."  Smithkline Beecham Corp. v. Apotex Corp., No. 98 C 3952, 2000 WL 116082, at *9 (N.D. Ill. Jan. 24, 2000).  Therefore, in consideration of the foregoing, the court **GRANTS** STI's Motion for Protective Order as to

Questions 4 and 5.

5. *Question 6*: Plaintiff does not oppose STI's Motion for Protective Order as to Question 6 and in fact attempted to withdraw the question. (See ECF No. 31-2.) Accordingly, the court **GRANTS** STI's Motion for Protective Order as to Question 6.

6. *Question 7*: The court finds that Question 7 seeks to reveal the mental impressions of STI's counsel as to the legal strategy behind the service of a supplemental discovery request on Plaintiff in the instant litigation and, therefore, any response would violate attorney-client privilege and/or the work product doctrine. See Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B, 230 F.R.D. 398 (D. Md. 2005) ("A mental impression on its own is not a cognizable communication within the purview of the attorney-client privilege. The privilege protects confidential communications between a client and an attorney for the purpose of obtaining legal advice. . . . Mental impressions by themselves do not qualify for protections under the work product doctrine. Such impressions must be related to specific litigation, actual or anticipated.") (Citations omitted.). Accordingly, the court **GRANTS** STI's Motion for Protective Order as to Question 7.

7. *Question 8*: The court finds that Tallent should provide Plaintiff with information regarding STI's current net worth. See Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 21–22 (1991) ("It was announced that the following could be taken into consideration in determining whether the award was excessive or inadequate: . . . the "financial position" of the defendant; . . . ."); Stamathis v. Flying J, Inc., 389 F.3d 429, 442 (4th Cir. 2004) ("[A] defendant's financial position is a proper consideration in assessing punitive damages."); McCloud v. Bd. of Geary Cnty. Comm'rs, No. 06-1002-MLB-DWB, 2008 WL 1743444, at *4 (D. Kan. Apr. 11, 2008) ("The court finds the current information of [a party's] net worth or financial condition relevant

to the issue of punitive damages.  The most recent annual reports and current financial statements of [the party] suffice to determine punitive damages. All other financial information is irrelevant to determining punitive damages.") (Internal citations omitted).  Therefore, the court **DENIES** STI's Motion for Protective Order as to Question 8.

## IV.    CONCLUSION

For the reasons set forth above, the court hereby **GRANTS** Stevens Transport, Inc.'s Motion for Protective Order and sustains its objections to Questions 4, 5, 6, and 7 as identified above.   The court **DENIES** Stevens Transport, Inc.'s Motion for Protective Order as to Questions 1, 2, 3, and 8.  Tallent should answer these questions if they are asked when Plaintiff re-convenes the Rule 30(b)(6) Deposition.

**IT IS SO ORDERED.**

United States District Judge

February 13, 2015
Columbia, South Carolina